# EXHIBIT 1

Boris Treyzon, Esq. (SBN 188893)
*btreyzon@actslaw.com*
Derek Braslow, Esq. (Pro Hac Vice Forthcoming)
*dbraslow@actslaw.com*
Michael Zuzo, Esq. (SBN 356667)
*mzuzo@actslaw.com*
**ABIR COHEN TREYZON SALO, LLP**
16001 Ventura Blvd., Ste. 200
Encino, CA 91436

Jonathan Orent (Pro Hac Vice Forthcoming)
*jorent@motleyrice.com*
**MOTLEY RICE, LLC**
40 Westminster Street, 5th Floor
Providence, RI 02903

Attorneys for Plaintiff,
JOHN BB ROE

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/12/2025 1:40 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By T. Tang, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JOHN BB ROE,<br><br>       Plaintiff,<br><br>  v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; CERRITOS CALIFORNIA STAKE OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 1 to 100,<br><br>       Inclusive,<br><br>       Defendants. | Case No.: 25NWCV02879<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **NEGLIGENCE**<br>2. **NEGLIGENT SUPERVISION OF A MINOR**<br>3. **SEXUAL ABUSE OF A MINOR**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>5. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**<br>6. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**<br>7. **BREACH OF MANDATORY DUTY**<br>8. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**[DEMAND FOR JURY TRIAL]** |

1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, JOHN BB ROE, of and for his causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1.      This case involves egregious sexual and emotional abuse of a child.

2.      Between 1998 and 2000, minor Plaintiff John BB Roe was systematically and continuously abused by an adult male religious leader of Defendants' Church in Cerritos, California. The extreme sexual and emotional abuse was allowed to occur on multiple occasions, was perpetrated in relation to Defendants' youth activities, and resulted from the abuser's position of authority in the Church.

## PARTIES

3.      Plaintiff JOHN BB ROE (**"Plaintiff"**) is an adult male under the age of forty at the time of this filing and a resident of Jackson County, Oregon. As a victim of childhood sexual assault, as defined by section 340.1 of the California Code of Civil Procedure, the name "John BB Roe" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. John BB Roe is entitled to protect his identity in this public court filing by not disclosing his name. (*See, Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758. As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme conduct by the Perpetrator.,

4.       Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning his identity and making his identity public, as such a public disclosure would further harm Plaintiff and his family.

5.      Defendant The Church of Jesus Christ of Latter-day Saints (hereinafter "**Church**"), is and was at all relevant times herein mentioned, the religious entity, located at Cerritos, California, through which the Perpetrator held and used his position as an Elder to groom and sexually abuse Plaintiff. The Church of Jesus Christ of Latter-day Saints is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah. The Church operates wards, meetinghouses, congregations, temples and other houses of worship within the State of California, including a house of worship located at 16115 Studebaker Road, Cerritos, California. The Church does business with

1  and conducts continuous and systemic activities in California. The Church of Jesus Christ of Latter-

2  day Saints' principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of

3  Utah 84150.  The Church is registered to do business in California, and the presiding Bishop serves

4  at the pleasure of and subject to the direct and absolute control of The Church. The divisions of the

5  Church are the wards, stakes and areas. The Church of Jesus Christ of Latter-day Saints is

6  independently liable for its own conduct as alleged herein, is liable as a successor in interest to the

7  other Defendant entities, and/or is an alter ego of Defendants.

8      6.    Defendant The Temple Corporation of The Church of Jesus Christ of Latter-day

9  Saints (hereinafter "**Temple Corporation**") is and was at all relevant times herein mentioned, a

10  religious entity and subsidiary of the Church. The Temple Corporation is a nonprofit corporation

11  duly organized and operating pursuant to the laws of the State of Utah. The Temple Corporation

12  operates properties, temples and other houses of worship within the State of California, including a

13  house of worship located at 16115 Studebaker Road, Cerritos, California. The Temple Corporation

14  does business with and conducts continuous and systemic activities in California. The Temple

15  Corporation's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State

16  of Utah 84150.  The Temple Corporation is registered to do business in California, and operates,

17  maintains and manages the Church's properties at the direction of and under the control of the

18  Church. The Temple Corporation is independently liable for its own conduct as alleged herein, is

19  liable as a successor in interest to the other Defendant entities, and/or is an alter ego of Defendants.

20      7.    Defendant Cerritos California Stake of The Church of Jesus Christ of Latter-day

21  Saints (hereinafter **"Cerritos California Stake"**) is, and was at all relevant times herein mentioned,

22  a religious entity of unknown form and a subsidiary of Defendant the Church of Jesus Christ of

23  Latter-day Saints. The Cerritos California Stake does business with and conducts continuous and

24  systematic activities in California. Its principal place of business is believed to be 16115 Studebaker

25  Road, Cerritos, California 90703. The Cerritos California Stake operates, maintains, and manages

26  The Church's congregations and wards within Los Angeles County at the direction of and under the

27  control of The Church. The Cerritos California Stake has, or as alleged herein had, responsibility

28

1    for some or all operations in Los Angeles County, California. The Cerritos California Stake reports

2    directly to The Church. The Cerritos California Stake is independently liable for its own conduct as

3    alleged herein, is liable as a successor in interest to the other Defendant entities, and/or is an alter

4    ego of Defendants.

5        8.    The Defendants each assumed responsibility for the wellbeing of their members,

6    whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other

7    positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday

8    School, Primary School teacher, and Elder, Defendants and their agents placed individuals in

9    positions of responsibility and authority over Church members. As a result, Defendants each had a

10   special relationship with members of the congregation, including the minor Plaintiff. This

11   relationship gave rise to a duty to protect members of the congregation, including the minor Plaintiff,

12   from a foreseeable risk of harm. At all relevant times, Defendants assumed special responsibilities

13   towards their members, including having a disciplinary and red flagging system meant to identify

14   and track sexual predators and other dangerous individuals within the membership in order to protect

15   innocent child members from the harm they might inflict.

16       9.    Defendants' income comes from member tithes which are turned over to the Church

17   for investment and other uses, including support of the administrative expenditures of the

18   Defendants' wards, stakes and areas. The Church does not provide information about their finances

19   to their members or the public. Upon information and belief, the Church receives more than seven

20   (7) billion dollars a year in tithing from members. Upon information reported publicly in the media,

21   The Church of Jesus Christ of Latter-day Saints owns financial assets and real estate in excess of

22   200 billion dollars.

23       10.    The true name[s] and capacities, whether individual, plural, corporate partnership,

24   associate, or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at

25   this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and

26   believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is

27   legally responsible, negligently or in some other actionable manner, for the events and happenings

28

4

hereinafter referred to and that the acts and omissions of said Defendants were the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

11.    Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-Defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

12.    All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of, condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

13.    The Perpetrator was an employee, agent, servant, member, and/or volunteer of Defendants when he sexually assaulted the Plaintiff—then a minor.

14.    During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants supervised and exercised control over the Perpetrator.

15.    Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

16.      Except as otherwise noted, a reference to "Defendants" in this Complaint shall include The Church, The Temple Corporation, The Cerritos California Stake, and DOES 1 through 100, inclusive.

## JURISDICTION AND VENUE

17.      This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of Los Angeles and the State of California.

18.      The subject incidents upon which this Complaint is based occurred in the City of Cerritos, within the County of Los Angeles, in the State of California. As such, venue is proper in the Los Angeles County Superior Court of California.

## FACTUAL ALLEGATIONS
### (Common to All Causes of Action)

19.      The Church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

20.      The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

21.      Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

22.      The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng

[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

23. Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction of the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

24. Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

25. Each Stake President calls upon 12 high priests to form the Stake High Council.[5] If an elder is called to serve on the high council, he is ordained a high priest before he is set apart. Under the direction of the stake presidency, high councilors help with God's work of salvation and exaltation in the stake.[6]

26. Defendants knew or should have known or reasonably suspected the abuse which occurred repeatedly on Defendants' premises.

27. Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by The Church of Jesus Christ of Latter-day Saints. Membership records are the Church's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records

---

[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)
[4] [DOE 1] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)
[5] Doctrine and Covenants 102:1; 124:131
[6] https://www.churchofjesuschrist.org/study/manual/general-handbook/6-stake-leadership?lang=eng

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the Church.

28.    Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."*** All annotations placed on a member's record are approved by the First Presidency.

29.    Defendants maintain a pattern and practice of concealing abuse from the authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

30.    The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."

31.    In 1995, Defendants created a 1-800 Help Line to report abuse, but it is only available to ecclesiastical leaders. Utah's Supreme Court characterized the Help Line as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[7]

---

[7] *See*, President Russell M. Nelson Letter (August 4, 2020); *see also,* FOX 13 Investigates: LDS Church urges leaders to not participate in 'any type of court case'

[8]*See*, *MacGregor v. Walker,* 322 P.3d 706, 707 (2014).

32.     In reality, The Church of Jesus Christ of Latter-day Saints primarily staffs the Help Line with attorneys. Rather than notifying law enforcement or other government authorities when Bishops or other Church clergy members call the Help Line regarding sexual abuse within the Church, Help Line operators transfer these calls to attorneys, who regularly advise the Bishops not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

33.     Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their mandatory duty to disclose and report abuse.

34.     In another sexual abuse-related civil lawsuit against the Church and its agents, an attorney for the Church "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[9]

35.     In other words, the Church implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for attorneys to snuff out complaints and protect the Church and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson's Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse. [10]

36.     Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as "a matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allow predators like the Perpetrator to continue his predatory conduct completely unhindered and protected, and in such action taken against John BB Roe's innocence and

---

[9] https://www.vice.com/en/article/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims/

[10] *See*, FN 11.

vulnerabilities, were careless, reckless, negligent, and consciously disregarded a minor's rights, as more fully described herein.

37.     Defendants also provide direct access to a large youth community wherein a danger to the community, like the Perpetrator, wielded power over John BB Roe.

**PLAINTIFF JOHN BB ROE**

38.     Plaintiff John BB Roe was a lifelong member of The Church of Jesus Christ of Latter-day Saints who attended religious services since he was born. At one time, John BB Roe's grandfather was appointed to serve as a Bishop at the Cerritos Stake.

39.     When Plaintiff was twelve years old, his father suddenly passed away.

40.     The death of Plaintiff's father had a profound effect on Plaintiff.

41.     Plaintiff attended the "Boys Group" Church meetings on Monday evenings at the Cerritos California Stake where the Perpetrator, an Elder within the Church was a church volunteer.

42.     As a result of Plaintiff's father's death, the Perpetrator was "paired up" with Plaintiff by the leadership of the Cerritos Stake for Church activities and outings, including home visits to older Church congregants, in order for the Perpetrator to serve as a positive male role model to Plaintiff following the passing of Plaintiff's father.

43.     The Perpetrator began to exploit this position of power in Plaintiff's life and Plaintiff's vulnerabilities following his father's death, and began to groom Plaintiff, including buying him a PlayStation console.

44.     One day, when Plaintiff was about 13 years old, he went to use the bathroom on Defendant Cerritos Stake's premises and the Perpetrator followed behind him.

45.     In the bathroom, the Perpetrator asked Plaintiff if he "wanted to do something cool back here." Plaintiff replied "yes" and, while they were talking, the Perpetrator began fondling Plaintiff's genitals over his pants.

46.     Plaintiff was frozen in fear and was unable to move while he was being assaulted in the bathroom by the Perpetrator.

47.     The sexual assault of Plaintiff escalated to the Perpetrator fondling his genitals under his pants during their weekly car rides to check-in on older congregants.

48.     Eventually, the Perpetrator began inviting Plaintiff into his home.

49.     While in the Perpetrator's home, when Plaintiff was sitting on the Perpetrator's couch, the Perpetrator began performing oral sex on Plaintiff to the point where Plaintiff ejaculated in the Perpetrator's mouth.

50.     The Perpetrator performed oral sex on Plaintiff to the point of ejaculation more than fifteen times; mostly while Plaintiff was seated on the Perpetrator's couch, but also one time in the Perpetrator's bedroom.

51.     Plaintiff was sexually assaulted by the Perpetrator for about two years, from age thirteen to age fifteen.

52.     During the time Plaintiff was being sexually assaulted, Plaintiff learned he was not the only boy from the Cerritos California Stake being sexually assaulted by the Perpetrator.

53.     Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that the Perpetrator was isolating and taking minor children, including Plaintiff, and committing inappropriate sexual acts with minor children. Therefore, Defendants knew or should have suspected that the Perpetrator was conducting inappropriate behavior and conduct with minor children, including Plaintiff, at The Church of Jesus Christ of Latter-day Saints' ward and congregation and failed to take any remedial action prior to the Perpetrator's sexual assault of Plaintiff.

54.     Prior to, during, and after the Perpetrator's sexual assault and/or sexual abuse and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers, knew or should have known, reasonably suspected, and/or were otherwise on notice, that the Perpetrator's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

55.     Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation, or any other persons of the possible risk of further

childhood sexual abuse by Perpetrator, limit or supervise the Perpetrator's access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse and molestation of Plaintiff.

56.    Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by Defendants' Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Perpetrator.

57.    As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Perpetrator's unlawful and inappropriate misconduct, Perpetrator was able to continue his sexual assaults and/or sexual abuse and molestation of Plaintiff.

58.    Defendants, acting through their representatives, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by Perpetrator because, inter alia, Defendants:

    a)  Negligently hired, supervised, retained, monitored, and/or investigated The Perpetrator.

    b)  Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

    c)  Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law enforcement.

59.    Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively made Perpetrator's conduct harder to detect, including, but not limited to:

    a)  Permitting Perpetrator to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator sexually abused and/or sexually assaulted, and molested minor

children, including Plaintiff.

b) Permitting Perpetrator continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Perpetrator's misconduct that created a risk of childhood sexual assault.

c) Failing to inform or concealing from law enforcement officials the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator had, and/or was engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d) Holding out and affirming Perpetrator to Plaintiff and Plaintiffs parent, other children and their parents, and to the community as being in good standing and trustworthy.

e) Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including Perpetrator with minor children.

f) Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

60.    Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

61.    Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

62.    The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

63.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. As a result of the abuse at the hands of the Perpetrator, Plaintiff will never be the same.

64.    As a direct and proximate result of the sexual abuse by the Perpetrator, Plaintiff suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of the abuse by the Perpetrator, Plaintiff was severely mentally, psychologically, and emotionally damaged. Plaintiff sustained severe psychological and emotional distress.  Plaintiff struggled and continues to struggle in his relationships with his family, peers and others.

65.    Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, sleeplessness and nightmares, substance abuse issues, self-harm, anxiety, depression, addiction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.  The significant emotional and psychological injuries sustained by Plaintiff dramatically transformed his personality.

## **FIRST CAUSE OF ACTION**

### **NEGLIGENCE**

### **(Plaintiff Against All Defendants and DOES 1-100)**

66.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

67.     Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of the Perpetrator by way of the special relationship existing between those individuals.

68.     Defendants knew or should have known of the Perpetrator's misconduct and inappropriate sexual behavior directed by the Perpetrator to minor Plaintiff John BB Roe.

69.     Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff John BB ROE or his mother regarding the abuse, despite having a legal duty to do so.

70.     As a result of Defendants' negligence, Plaintiff John BB Roe was sexually abused by the Perpetrator.

71.     Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, he would not have been subjected to the misconduct aimed against him.

72.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## **SECOND CAUSE OF ACTION**

### **NEGLIGENT SUPERVISION OF A MINOR**

### **(Plaintiff Against All Defendants and DOES 1-100)**

73.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

74.     Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to

them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, the Perpetrator, on Defendants' premises and other locations allowing for direct, unsupervised access to Defendants' youth members. Thus, each of these said Defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; the Perpetrator, a figure of authority for the Defendants' church community shared with Plaintiff.

75.    Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that the Perpetrator was engaged in repeated inappropriate and harassing relationships with Plaintiff and may have exhibited inappropriate conduct around other minors; allowing Plaintiff to spend unsupervised one-on-one time with the Perpetrator; ignoring and turning a blind-eye to Plaintiff's whereabouts and wellbeing, so that he could be with the Perpetrator; and allowing the Perpetrator to repeatedly sexually harass and abuse the minor Plaintiff.

76.    Had Defendants adequately and properly supervised, monitored, and protected its students, Plaintiff would not have been harmed.

77.    Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

78.    Had Defendants, each of them, adequately performed their duty and responsibility, then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment he endured, and which still impacts his life today, as alleged herein.

79.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**<u>THIRD CAUSE OF ACTION</u>**

**<u>SEXUAL ABUSE OF A MINOR</u>**

16

**(Plaintiff Against All Defendants and DOES 1-100)**

80.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

81.    While Plaintiff was a member at Defendants' Church, the Perpetrator took advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given his age.

82.    Defendants ratified the Perpetrator's sexual abuse of Plaintiff because Defendants had knowledge, or should have had knowledge, that the Perpetrator was engaging in inappropriate and harmful conduct with Plaintiff and other minor youth members. Despite this, Defendants intentionally turned a blind eye and continued to allow the Perpetrator to remain in a position of power and authority within the Church, failing to take any action to prevent further abuse. Defendants did not discipline, denounce, or discharge the Perpetrator; instead, by failing to act, Defendants accepted and ratified his conduct, thereby enabling Perpetrator to continue his sexual abuse of Plaintiff.

83.    At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with The Church of Jesus Christ of Latter-day Saints when they ratified the Perpetrator's criminal conduct and adopted it as if it were their own conduct.

84.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

85.    In committing the acts described herein, the conduct of the Perpetrator, Defendants, their agents, and employees, and DOES 1-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or

exemplary damages pursuant to C.C.P. section 425.14 against religious entities, The Church, The Temple Corporation and The Cerritos California Stake.

## FOURTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff Against All Defendants and DOES 1-100)

86.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

87.    Acting with knowledge of their superior positions and special relationships with Plaintiff John BB Roe and realizing Plaintiff's heightened susceptibility to emotional distress due to his young age, inexperience, and vulnerability, Defendants embarked on a course of grooming, coercion, and intimidation so that Perpetrator could ultimately force Plaintiff to engage in unlawful sexual acts. At all relevant times, the Perpetrator, an Elder in the Cerritos California Stake of Defendants Church, held an authoritative and influential position that required him to interact with youth members. Using this position of trust, he manipulated Plaintiff into believing that he could not and should not report the abuse to anyone, and that speaking out would result in spiritual condemnation, loss of standing for him and his family in Defendants' Church, and other severe consequences.

88.    The Perpetrator's misconduct was outrageous, particularly because he sexually abused Plaintiff when John BB Roe was a minor, causing severe and lasting emotional and psychological injuries, including PTSD, anxiety, depression, nightmares, dissociation, and long-term difficulties with trust and intimacy. It was also outrageous because the Perpetrator used the authority, doctrine, and influence of Defendants to silence Plaintiff, making him believe that disclosure would bring shame and harm to his family and jeopardize their spiritual salvation.

89.    The Perpetrator's acts were intentional, willful, abusive, oppressive, and malicious, and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and severe emotional distress, or with reckless disregard for the high probability that such extreme distress would result.

90.    Upon information and belief, Defendants, by and through its agents and or employees, each of them, ratified the Perpetrator's sexual abuse of Plaintiff because Defendants had prior knowledge, through earlier reports or warnings, of the Perpetrator's inappropriate conduct with minors. Despite this knowledge, Defendants failed to take reasonable steps to protect Plaintiff and continued to allow the Perpetrator to serve in positions granting him unsupervised access to youth members, thereby enabling the abuse.

91.    As a direct and legal result of the actions and misconduct of Defendants, and their agents and/or employees, each of them, including but not limited to allowing the Perpetrator continued access to minor Plaintiff and failing to protect Plaintiff from foreseeable harm, Plaintiff has suffered and will continue to suffer severe emotional distress, psychological trauma, loss of enjoyment of life, and other special and general damages in amounts to be proven at trial.

## FIFTH CAUSE OF ACTION

### NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE

### (Plaintiff Against All Defendants and DOES 1-100)

92.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

93.    Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 1-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

94.    During the time Plaintiff was being sexually abused by the Perpetrator, Defendants knew or should have known of any complaints of serious misconduct made against the Perpetrator, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Robert Giovannucci.

95.    Instead, Defendants failed to protect Plaintiff and allowed the Perpetrator to maintain his position of authority within the Church community. Defendants systematically ignored Plaintiff during the two years the abuse was ongoing. Plaintiff's participation in Church youth activities at

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

the Defendants Church, and the Perpetrator's repeated unsupervised access to Plaintiff, should have alerted Defendants to the ongoing risk and Plaintiff's peril. Defendants' failure to intervene or provide support reflected a complete abandonment of their duty to Plaintiff in favor of preserving the Perpetrator's authority and position within the Church. This disregard for Plaintiff, despite the harm he endured as a minor in Defendants' care, constitutes an egregious failure to fulfill their obligations to protect him.

96.    Defendants knew or should have known that the Perpetrator engaged in repeated misconduct against male and female members of the community, one being Plaintiff.

97.    Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise the Perpetrator on Defendants' premises.

98.    Had Defendants, each of them, properly investigated, supervised, trained, and monitored the Perpetrator's conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed the Perpetrator to continue, unhindered, with his predatory conduct directed towards underage members of the Church community, including Plaintiff.

99.    Defendants negligently hired, supervised, retained, monitored, and otherwise employed Robert Giovannucci and negligently failed to ensure the safety of a minor community member in the Church, Plaintiff, who was entrusted to Defendants' custody, care and control.

100.    Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including Robert Giovannucci.

101.    Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their Scout Leader holders and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon him.

102.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional

distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SIXTH CAUSE OF ACTION

### NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE

**(Plaintiff Against All Defendants and DOES 1-100)**

103.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

104.    Defendants, their agents and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, and DOES 1-100, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

105.    Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn him of known and knowable dangers posed by its faculty and staff, including the Perpetrator; by failing to inform and educate him on their sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train their faculty and staff, including the Perpetrator, on Defendants' sexual harassment policies.

106.    As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 1-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by the Perpetrator.

107.    Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

108.    As a direct and legal result of this negligent conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and

treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SEVENTH CAUSE OF ACTION

### BREACH OF MANDATORY DUTY:

### FAILURE TO REPORT SUSPECTED CHILD ABUSE

### (Plaintiff Against All Defendants and DOES 1-100)

109.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

110.    Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

111.    Defendants, acting through their employees, had, or should have had a reasonable suspicion that the Perpetrator was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

112.    Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

113.    By failing to report suspected child abuse, Defendants allowed Robert Giovannucci to continue, unhindered, in his abuse of minor children, including Plaintiff.

114.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff Against All Defendants and DOES 1-100)

115.    Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

116.    Defendants owed a duty of care to Plaintiff to protect him from known sexual abusers.

117.    Defendants unreasonably endangered Plaintiff's physical safety by putting him in direct and frequent contact with known child sex abusers, who Defendants were protecting.

118.    In doing so, the Perpetrator had unfettered and unsupervised access to Plaintiff and thereby sexually abused minor John BB Roe on multiple occasions during a period of two years.

119.    Defendants knew or should have that Plaintiff would have experienced extreme sexual abuse and emotional distress as a result.

120.    As a direct and legal result of Defendants actions and misconduct, Plaintiff experienced physical, emotional and psychological injuries for which he is entitled to monetary damages and other relief.

121.    Defendants' actions amounted to malicious and oppressive conduct because Defendants knowingly harbored a known sexual predator and placed him in direct contact with minor congregants. Defendants were in a position to prevent Plaintiff from being sexually abused but took actions to facilitate incidences of sexual abuse by Perpetrator Giovannucci.

122.    Defendants' conduct was wanton, malicious, willful, and/or cruel, as a result, Plaintiff is entitled to punitive damages.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JOHN BB ROE prays for judgment against Defendants THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, CORPORATION OF THE PRESIDENT OF THE CERRITOS CALIFORNIA, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, their employees and/or agents, and DOES 1 through 100, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;

2. For an award of punitive and exemplary damages against Defendants, its agents and or employees, including Does 1 through 100;

3. Attorney's fees;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

Dated: August 8, 2025                    **ABIR COHEN TREYZON SALO, LLP**


By: _____*Michael Zuzo*_____
Michael Zuzo

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL